SETH P. COX (SBN 277239)
seth.cox@sethpcoxlaw.com
THE LAW OFFICE OF SETH P. COX, PC
811 W. 7th Street, 12th Floor
Los Angeles, California 90017
Telephone: 213.589.1042
Seth.cox@sethpcoxlaw.com
    -and-
AMELIA B. VALENZUELA (SBN 320428)
amelia.valenzuela@quarles.com
QUARLES & BRADY LLP
101 West Broadway, Suite 1500
San Diego, California 92101
Telephone: 619.237.5200
Facsimile: 619.615.0700

*Attorneys for Plaintiffs Patricia and David Carlin*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| PATRICIA CARLIN and DAVID CARLIN, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>DAN FLEYSHMAN and CASEY MARTIN, husband and wife; BLACKSITE RANCH LLC, a California limited liability company; CARDS AND COFFEE, INC a/k/a CARDS AND COFFEE, LLC, a California corporation; MORE FRANCHISES, LLC, a Delaware limited liability company; ELEVATOR STUDIO, LLC, a California limited liability company; WYLD PRODUCTS, LLC, a Delaware limited liability company; WYLD JUNGLE, LLC, a Delaware limited liability company; JOHN AND JANE DOES I-X; XYZ CORPORATIONS I-X; ABC PARTNERSHIPS I-X; and XYZ LLC I-X,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) UNJUST ENRICHMENT;**<br>**(3) ACCOUNTING;**<br>**(4) BREACH OF FIDUCIARY DUTY;**<br>**(5) INTENTIONAL MISREPRESENTATION;**<br>**(6) NEGLIGENT MISREPRESENTATION;**<br>**(7) FRAUDULENT CONCEALMENT;**<br>**(8) CONVERSION;**<br>**(9) CONSTRUCTIVE FRAUD;**<br>**(10) UNFAIR BUSINESS PRACTICES;**<br>**(11) PROMISSORY FRAUD; AND**<br>**(12) RESCISSION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Patricia Carlin ("**Ms. Carlin**") and David Carlin ("**Mr. Carlin**" and, collectively with Ms. Carlin, "**Plaintiffs**"), by and through undersigned counsel, file this Complaint against Defendants, Dan Fleyshman ("**Mr. Fleyshman**") and Casey Martin, husband and wife (collectively, "**Fleyshmans**"); Blacksite Ranch LLC, a California limited liability company ("**Blacksite**"); Cards and Coffee, Inc. a/k/a Cards and Coffee, LLC, a California corporation ("**Cards & Coffee**"); More Franchises, LLC, a Delaware limited liability company ("**More Franchises**"); Elevator Studio, LLC, a California limited liability company ("**Elevator**"); Wyld Products, LLC, a Delaware limited liability company ("**Wyld Products**"); Wyld Jungle, LLC, a Delaware limited liability company ("**Wyld Jungle**" and, collectively with Fleyshmans, Blacksite, Cards & Coffee, More Franchises, Elevator, and Wyld Products, "**Defendants**"), and complain and allege as follows:

## <u>NATURE OF THE ACTION</u>

1.     This suit arises out of a pattern of fraudulent behavior on the part of Mr. Fleyshman and his agents and conspirators.

2.     Mr. Fleyshman is a widely recognized influencer and self-proclaimed "angel investor" and entrepreneur. Mr. Fleyshman publicly holds himself out as the principal of a number of businesses and charitable organizations.

3.     Throughout a period of more than two years, Mr. Fleyshman fraudulently   induced   Plaintiffs   to   make   numerous   investments   into   Mr.

Fleyshman's alleged business enterprises, with such invested funds ultimately converted by Mr. Fleyshman for his personal uses or other improper purposes.

4.      During the relevant time period, Mr. Fleyshman induced Plaintiffs to make over $1.4 million in purported "investments" or "loans" related to at least four (4) different enterprises controlled by Mr. Fleyshman based on assurances that such enterprises were top-performing enterprises, were actively distributing funds to investors, and/or were paying their respective debts as they became due.

5.      Mr. Fleyshman further personally represented to Plaintiffs on several occasions that Plaintiffs would receive the payments that they were promised when due, yet he has failed to follow through on these promises.

6.      Mr. Fleyshman also directed his business associates, including Vanessa Olmos, to make similar representations to Plaintiffs that they would be receiving the payments on their loans and investments as they were promised.

7.      Notwithstanding Mr. Fleyshman's fraudulent statements, Plaintiffs have not been timely paid back for the "loans" that they have provided to these entities, and the value of their "investments" depreciated and/or never yielded any return.

8.      Upon information and belief, Mr. Fleyshman converted the proceeds of Plaintiffs' loans and investments for his own personal use—namely, to fund a lavish "influencer" lifestyle that he uses to induce other "investors" to give him money.

COMPLAINT

9.      Essentially, Mr. Fleyshman and his confederates and conspirators are operating a pyramid scheme on the back of social and other new media.

**PARTIES, JURISDICTION, AND VENUE**

10.      Plaintiffs are natural persons, husband and wife, domiciled in and citizens of the State of Arizona.

11.      Upon information and belief, Fleyshmans are natural persons, husband and wife, domiciled in and citizens of the State of California.

12.      Upon information and belief, Blacksite is a California limited liability company with its principal place of business in the State of California. Mr. Fleyshman and Bedros Keuilian are co-founders and managers of Blacksite, and Elevator is the manager of Blacksite. Upon further information and belief, no member or manager of Blacksite is a citizen of or domiciled in the State of Arizona.

13.      Upon information and belief, Cards & Coffee is a California corporation with its principal place of business in the State of California. Upon information and belief, Mr. Fleyshman is the manager of Cards & Coffee. Upon further information and belief, no member or manager of Cards & Coffee is a citizen of or domiciled in the State of Arizona.

14.      Upon information and belief, More Franchises is a Delaware limited liability company with its principal place of business in the State of California. Elevator is the manager of More Franchises. Upon further information and belief,

1   no member or manager of More Franchises is a citizen of or domiciled in the State

2   of Arizona.

3       15.    Upon information and belief, Elevator is a California limited liability

4   company with its principal place of business in the State of California. Mr.

5   Fleyshman and Joey Carson are the managers of Elevator. Upon further

6   information and belief, no member or manager of Elevator is a citizen of or

7   domiciled in the State of Arizona.

8       16.    Upon information and belief, Wyld Products is a Delaware limited

9   liability company with its principal place of business in the State of California.

10  Michael A. Holston, Joey Carson, and Dan Fleyshman are co-managers of Wyld

11  Products. Upon further information and belief, no member or manager of Wyld

12  Products is a citizen of or domiciled in the State of Arizona.

13      17.    Upon information and belief, Wyld Jungle is a Delaware limited

14  liability company with its principal place of business in the State of California.

15  Upon information and belief and based on the information currently available to

16  Plaintiffs, Wyld Jungle is the sole manager of Wyld Products.  Elevator, Mr.

17  Fleyshman and Michael Holston are managers/members of Wyld Jungle. Upon

18  further information and belief, no member or manager of Wyld Jungle is a citizen

19  of or domiciled in the State of Arizona.

20      18.    Defendants John and Jane Does I-X, XYZ Corporations I-X, ABC

21  Partnerships I-X, and XYZ LLC I-X are fictitious names designating an individual,

COMPLAINT

individuals, or other legal entities that have not yet been identified and who have acted in concert with the named Defendants either as principals, agents, co-participants, or co-conspirators whose true names Plaintiffs will insert when identified.

19.    This Court has subject matter jurisdiction over this matter because (1) there is complete diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332; and (2) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

20.    This Court has personal jurisdiction over Fleyshmans because they are domiciled in and citizens of the State of California and each of them caused events to occur in the State of California out of which this action arises.

21.    This Court has personal jurisdiction over Blacksite, Cards & Coffee, and Elevator because they are limited liability companies and the natural person members ultimately controlling these entities are all domiciled in and citizens of the State of California businesses, with principal places of business in the State of California and because each of them caused events to occur in the State of California out of which this action arises.

22.    This Court has personal jurisdiction over More Franchises, Wyld Products, and Wyld Jungle because they are limited liability companies and the natural person members ultimately controlling these entities are all domiciled in and citizens of the State of California with principal places of business in the State

of California and because each of them caused events to occur in the State of California out of which this action arises.

23.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to this claim occurred in Riverside County.

## **BLACKSITE RANCH**

24.    In or around the summer of 2023, Mr. Fleyshman contacted Ms. Carlin to solicit an investment from her in Blacksite.

25.    In soliciting this investment, Mr. Fleyshman represented to Plaintiffs that he was the owner and operator of a ranch, training center, and wedding venue located in Riverside County, California (the "**Blacksite Business**").

26.    As part of this solicitation, Mr. Fleyshman represented to Ms. Carlin that the intended purpose of the loan being solicited was to pay out existing investors in the Blacksite Business who were causing him problems.

27.    As part of this solicitation, Mr. Fleyshman represented to Ms. Carlin that an investment in Blacksite would result in a return of a minimum of eight percent (8%) interest, paid out monthly.

28.    In reliance upon Mr. Fleyshman's representations set forth above, Ms. Carlin made two wire transfers to Blacksite (collectively, the "**Blacksite Loan**"): (1) on or around May 11, 2023, Ms. Carlin wired five-hundred thousand

QB\188085.00001\100773924.6

1    dollars ($500,000.00) to Blacksite; and (2) on or around August 1, 2023, Ms.

2    Carlin wired two-hundred thousand dollars ($200,000.00) to Blacksite.

3         29.    Each of the foregoing wire transfers was made in connection with a

4    *Confidential Private Placement Memorandum* (the **Blacksite Memorandum**").

5    Complete and authentic copies of redacted bank statements evidencing the

6    Blacksite Loan are attached hereto as **Exhibit "A"** and are incorporated herein by

7    this reference.

8         30.    On May 12, 2023, Mr. Fleyshman confirmed receipt of the

9    $500,000.00 wire transfer via email exchange with Ms. Olmos. A complete and

10   authentic copy of this email exchange is attached hereto as **Exhibit "B"** and is

11   incorporated herein by this reference.[1]

12        31.    On January 23, 2024, Ms. Olmos confirmed receipt of each of the

13   wire transfers constituting the Blacksite Loan through an email exchange and

14   further represented to Ms. Carlin in this exchange that "Your interest payments

15   will be paid soon." A complete and authentic copy of this email exchange is

16   attached hereto as **Exhibit "C"** and is incorporated herein by this reference.

17        32.    On January 23, 2024, Ms. Olmos confirmed the total loan from Ms.

18   Carlin to Blacksite in the amount of seven-hundred thousand dollars ($700,000.00)

19   via email exchange with Ms. Carlin. *See* Exhibit "C" attached hereto.

20

21   _____
     [1]    Email exchanges, text messages, and social media posts attached hereto have had
     personally identifying information such as emails and phone numbers redacted to protect all
     parties' information from public disclosure.

-8-
COMPLAINT

33.    The Blacksite Memorandum indicated that any loan proceeds received would be used "to acquire the Property and facilitate the development of the Training Center," which contradicted Fleyshman's previous representations regarding the use of funds.  Blacksite Memorandum, p. 2.

34.    Under the Blacksite Memorandum, Ms. Carlin received a *Blacksite Ranch LLC Promissory Note* dated August 9, 2023 (the "**Blacksite Note**") executed by Blacksite for the benefit of Ms. Carlin in the principal sum of seven-hundred thousand dollars ($700,000.00). A complete and authentic copy of the Blacksite Note is attached hereto as **Exhibit "D"** and is incorporated herein by this reference.

35.    The Blacksite Note is governed by California law. Blacksite Note, ¶ 8.

36.    Under the Blacksite Note, Blacksite agreed to pay monthly interest payments at eight percent (8%) per annum beginning ninety (90) days after the date of the Note and maturing after 2 years or August 9, 2025 (the "**Blacksite Maturity Date**"). Blacksite Note, ¶¶ 1, 3.

37.    Under the Blacksite Note, Blacksite granted to Ms. Carlin a security interest in all of Blacksite's aggregate assets and its interest in the Property and Training Center (as those terms are defined in the Blacksite Memorandum) (collectively, the "**Blacksite Collateral**"). Blacksite Note, ¶ 5.

QB\188085.00001\100773924.6

38.     Under the Blacksite Note, Blacksite's failure to make any payment (after applicable notice and cure periods) thereunder constitutes an Event of Default. Blacksite Note, ¶ 6.

39.     Under the Blacksite Note, Ms. Carlin is entitled to recover all reasonable attorneys' fees directly related to Ms. Carlin's efforts necessary to enforce the Note or to collect payment thereunder. Blacksite Note, ¶ 10.

40.     To date, Blacksite has made only three interest payments under the Blacksite Note:

| | |
|---|---|
| August 16, 2023 | $ 14,210.14 |
| October 24, 2023 | $ 4,756.16 |
| October 24, 2023 | $ 4,602.74 |
| **TOTAL** | **$ 23,569.04** |

41.     After accounting for payments received to date, Blacksite owes Ms. Carlin the following under the Blacksite Note:

| | |
|---|---|
| Principal | $ 700,000.00 |
| Interest (through 2/6/2026) | $ 139,923.29 |
| Attorneys' Fees and Costs (est. as of 2/6/2026) | $ 81,725.00 |
| Payments Received | $ (23,569.04) |
| **TOTAL** | **$ 898,079.25** |

42.     On May 15, 2024, in response to an inquiry from Ms. Carlin regarding payments on the Blacksite Note, Ms. Olmos told Ms. Carlin "You will be paid soon." A complete and authentic copy of this email exchange is attached hereto as **Exhibit "E"** and is incorporated herein by this reference.

43.    On September 9, 2024, Mr. Fleyshman sent a text message to Ms. Carlin stating that there were three (3) groups "actively working on the refinance and development which comes with a refinance up front to pay down your notes with full interest included" and that there was "no Version *[sic]* of it [the Blacksite Note] not being paid back one way or another. (Plus all interest)." A complete and authentic copy of this text exchange is attached hereto as **Exhibit "F"** and is incorporated herein by this reference.

44.    On January 17, 2025, Mr. Fleyshman listed the Blacksite Business for sale for approximately fifteen million dollars ($15,000,000.00).

45.    On February 25, 2025, in response to an inquiry from Ms. Carlin regarding payments due under the Blacksite Note, Ms. Olmos represented to Ms. Carlin through an email exchange that "The interest will be paid. There is [a] plan to solve this." A complete and authentic copy of this email exchange is attached hereto as **Exhibit "G"** and is incorporated herein by this reference.

46.    On May 20, 2025, Mr. Fleyshman advised Plaintiffs that he had received funding from a private lender and that all loans would be repaid.

47.    On July 2, 2025, Mr. Fleyshman advised Plaintiffs that he had more investors who would purchase the Blacksite Business.

48.    On September 4, 2025, Mr. Fleyshman made public statements indicating that he was planning to sell the Blacksite Business through a raffle and that he would donate all proceeds therefrom (over fifteen million dollars) to

QB\188085.00001\100773924.6

charity. *See* "$15 Million Ranch, Considered the Most Valuable Real Estate in Raffle Prize History, Could be Yours for Just $7 at RanchRaffle.com", YAHOO! FINANCE,    https://finance.yahoo.com/news/15-million-ranch-considered-most-161200647.html (last accessed February 6, 2026).

49.    On December 4, 2025, Mr. Fleyshman sent an email to Ms. Carlin wherein he represented that he was "working on a transaction with a public company which will free up $3,750,000 liquid, that I will Then *[sic]* be able to utilize for you [for repayment of the Blacksite Note and other loans]." A complete and authentic copy of this email exchange is attached hereto as **Exhibit "H"** and is incorporated herein by this reference.

50.    Upon information and belief, Mr. Fleyshman never sold the Blacksite Business, as alleged.

51.    Mr. Fleyshman never paid Plaintiffs for the balance due and owing on the Blacksite Note.

52.    Upon information and belief, the funds constituting the Blacksite Loan were not used for their stated purpose and were instead converted by Mr. Fleyshman for his personal use, specifically to fund other projects, service other debt obligations, or to fund his personal expenses.

53.    Upon information and belief, Blacksite Ranch LLC was already encumbered by a $4,000,000.00 secured loan from Ortsac Holdings, LLC ("**Ortsac Holdings**") dated August 1, 2022, which was secured by the Blacksite property.

54.     Mr. Fleyshman failed to disclose the $4,000,000.00 loan from Ortsac Holdings to Plaintiffs at any time before or after Plaintiffs made the Blacksite Loan.

55.     Upon information and belief, Mr. Fleyshman personally guaranteed the $4,000,000.00 Ortsac Holdings loan. Upon further information and belief, Blacksite has since defaulted on that loan, and Ortsac Holdings filed suit against Mr. Fleyshman to enforce his personal guarantee.

56.     On October 7, 2025, the Carlins provided written notice of Blacksite's default under the Blacksite Note and made demand that Blacksite return to the Carlins the "entire principal amount and unpaid accrued interest." A complete and authentic copy of the October 7, 2025 demand is attached hereto as **Exhibit "I."**

57.     On February 20, 2026, the Carlins provided another written notice of Blacksite's default under the Blacksite Note and made demand that Blacksite return to the Carlins the "entire principal amount and unpaid accrued interest." A complete and authentic copy of the February 20, 2026 demand is attached hereto as **Exhibit "J."**

## **CARDS & COFFEE**

58.     In or around the summer of 2023, Mr. Fleyshman contacted Plaintiffs to solicit an investment from them in Cards & Coffee, which was represented to

Plaintiffs as Mr. Fleyshman's passion project and would result in significant returns on investment.

59.    Mr. Fleyshman represented to Plaintiffs that Cards & Coffee would be expanded into a national chain and that he had already raised capital and was in possession of millions of dollars in other investments to fund this expansion.

60.    In reliance upon Mr. Fleyshman's representations, on May 11, 2023, Plaintiffs made one (1) wire transfer to Cards & Coffee in the amount of two-hundred and fifty thousand dollars ($250,000.00) (the "**Cards & Coffee Investment**"). Complete and authentic copies of the redacted bank statements evidencing this transfer are attached hereto as Exhibit "A."

61.    On December 4, 2025, Mr. Fleyshman represented in an email to Ms. Carlin that he "would contribute capital to make that business a success. It's surpassed $38,000,000 gross sales now . . . ." A complete and authentic copy of this email exchange is attached hereto as **Exhibit "K"** and is incorporated herein by this reference.

62.    Notwithstanding these representations, Cards & Coffee provided K-1 tax forms to Plaintiffs showing a reduction in their capital accounts and losses for every tax period reported. Complete and authentic copies of these redacted tax statements are attached collectively hereto as **Exhibit "L"** and are incorporated herein by this reference.

QB\188085.00001\100773924.6

63.     Upon information and belief, the funds constituting the Cards & Coffee Investment were not used for their stated purpose and were instead converted by Mr. Fleyshman for his personal use—specifically to fund other projects or to fund his personal expenses.

64.     Plaintiffs have received no distributions or payments on account of their membership interest in Cards & Coffee.

65.     On October 7, 2025, Plaintiffs provided written notice of Cards & Coffee's defaults under the Cards & Coffee Operating Agreement and made demand that Cards & Coffee provide Plaintiffs with information regarding the Cards & Coffee Investment.

66.     On February 20, 2026, Plaintiffs, as members of Cards & Coffee, sent a written notice of demand to Cards & Coffee requesting that the managers of Cards & Coffee investigate their breaches of fiduciary duty and either remedy those breaches, or file a derivative lawsuit on behalf of its members. A complete and authentic copy of the February 20, 2026 demand is attached hereto as **Exhibit "M."**

## **MORE FRANCHISES AND EVERBOWL**

67.     In or around September of 2023, Mr. Fleyshman contacted Plaintiffs to solicit an investment in More Franchises, which Mr. Fleyshman represented would be used to fund everbowl, an acai bowl restaurant franchise, in which Mr. Fleyshman already owned several locations ("**everbowl**").

68.     On September 11, 2023, Plaintiffs made one (1) wire transfer to More Franchises in the amount of two-hundred thousand dollars ($200,000.00) (the "**Everbowl Investment**"). Complete and authentic copies of the redacted bank statements evidencing this transfer are attached hereto as Exhibit "A."

69.     Plaintiffs made the Everbowl Investment in reliance upon the representations set forth in a *Subscription (Unit Purchase) Agreement – More Franchises, LLC* (the "**More Franchises Agreement**"), including that Mr. Carlin purchased and presently possessed two thousand (2,000) Class B Units in More Franchises. A complete and authentic copy of the More Franchises Agreement is attached hereto as **Exhibit "N"** and is incorporated herein by this reference.

70.     Mr. Carlin is listed as a Class "B" member in More Franchises' Operating Agreement, a complete and authentic copy of which is attached hereto as **Exhibit "O"** and is incorporated herein by this reference.

71.     Pursuant to the More Franchises Operating Agreement, Elevator is the manager of More Franchises. *See* More Franchises Operating Agreement, § 4.1.

72.     On June 18, 2024, Mr. Fleyshman represented to Plaintiffs through text message that "Everbowl does distributions, because they raised an extra 15 million last year, so there's no debt, and there's no need for all the excess profits that are coming in, so it's been paying distributions even before the 15 million came in, but now it's just gonna *[sic]* keep paying distributions because there's no

QB\188085.00001\100773924.6

need for so much extra capital." A complete and authentic copy of this text message exchange is attached hereto as **Exhibit "P"** and is incorporated herein by this reference.

73.    When Ms. Carlin contacted Jeff Fenster ("**Mr. Fenster**")—everbowl's franchisor—about the More Franchises investment in everbowl, Mr. Fenster advised Ms. Carlin through text message that he "[was] not part of that entity in any way or part of a raise . . . ." A complete and authentic copy of this text message exchange is attached hereto as **Exhibit "Q"** and is incorporated herein by this reference.

74.    On September 30, 2024, Ms. Carlin received a K-1 tax form from More Franchises showing a decrease in capital account. A complete and authentic copy of this redacted K-1 tax form is attached hereto as **Exhibit "R"** and is incorporated herein by this reference.

75.    On September 16, 2025, Ms. Carlin contacted Mr. Fleyshman to request K-1 tax forms for the following year with respect to Plaintiffs' investment in More Franchises.

76.    Notwithstanding multiple requests for same, More Franchises failed or refused to provide any K-1 tax forms to Plaintiffs regarding their investment in More Franchises.

77.    Upon information and belief, the funds constituting the Everbowl Investment were not used for their stated purpose and were instead converted by

Mr. Fleyshman for his personal use—specifically to fund other projects or to fund his personal expenses.

78.    Plaintiffs received no distributions or payments on account of their ownership interest in More Franchises.

79.    On October 7, 2025, Plaintiffs wrote to Mr. Fleyshman requesting information related to their investment in More Franchises and information related to More Franchises' plan to make distributions to its members. *See* Exhibit "I" attached hereto.

80.    On February 20, 2026, Plaintiffs, as members of More Franchises, sent a written notice of demand to More Franchises requesting that the managers of More Franchises investigate their breaches of fiduciary duty and either remedy those breaches, or file a derivative lawsuit on behalf of its members. A complete and authentic copy of the February 20, 2026 demand is attached hereto as **Exhibit "S."**

## WYLD PRODUCTS AND WYLD JUNGLE

81.    In or around November of 2023, Mr. Fleyshman contacted Ms. Carlin to solicit an investment in Wyld Jungle.

82.    Mr. Fleyshman represented that Wyld Jungle would be "our biggest company ever." *See* text message exchange dated October 15, 2023, a complete and authentic copy of which is attached hereto as **Exhibit "T"** and is incorporated herein by this reference.

83.     Mr. Fleyshman represented that the investment proceeds made by Plaintiffs in Wyld Jungle would be used to fund an operating animal sanctuary that would host weddings and AirBNB reservations, and would involve product deals such as specialized juices, animal crackers, stuffed animals, toys, dog foods, and other products related to the enterprise (collectively, the "**Wyld Business**").

84.     In reliance upon the representations set forth above, on November 17, 2023, Plaintiffs made one (1) wire transfer to Wyld Jungle in the amount of two-hundred thousand dollars ($200,000.00) (the "**Wyld Loan**"). Complete and authentic copies of the redacted bank statements evidencing this transfer are attached hereto as Exhibit "B".

85.     Plaintiffs made the Wyld Loan pursuant to a *Convertible Promissory Note* from Wyld Products (the "**Wyld Note**").

86.     On September 30, 2024, the Wyld Business and associated property was raided by authorities with the City of Riverside for failing to have the appropriate permits and licenses in place for its animal sanctuary and for failing to comply with the City of Riverside's zoning requirements. *See* Instagram Post from @danfleyshman dated September 30, 2024 attached hereto as **Exhibit "U"** and incorporated herein by this reference; *see also* "The Wyld Jungle: An Illegal Roadside Zoo Where Animals Are Harassed for Viral Content," PETA, https://www.peta.org/news/the-wyld-jungle/ (last accessed February 6, 2026).

87.    On November 20, 2025, Mr. Fleyshman emailed Ms. Carlin regarding the Wyld Loan, reassuring her that the loan would be repaid in full.

88.    Notwithstanding these representations and promises, neither Mr. Fleyshman, Wyld Jungle, nor Wyld Products have repaid any portion of the Wyld Loan.

89.    Upon information and belief, the funds constituting the Wyld Loan were not used for their stated purpose and were instead converted by Mr. Fleyshman for his personal use, specifically to fund other projects or to fund his personal expenses.

90.    On February 20, 2026, the Carlins provided another written notice of default under the Wyld Note and made demand that Wyld Products, LLC return to the Carlins the "entire principal amount and unpaid accrued interest."  A complete and authentic copy of the February 20, 2026 demand is attached hereto as **Exhibit "V."**

## PLAINTIFFS' DAMAGES TO DATE

91.    As a result of the misrepresentations and failures to repay the amounts lent and/or invested as set forth above, as of February 20, 2026, Plaintiffs have been damaged in an amount to be proven at trial but in no events less than the following:

| | | |
|---|---|---|
| Blacksite Loan | $ | 898,079.25 |
| Cards & Coffee Investment | $ | 250,000.00 |
| More Franchises Investment | $ | 200,000.00 |

| Wyld Loan | $ 200,000.00 |
| **TOTAL** | **$ 1,548,079.25** |

92.     Defendants are expressly liable for all of the above amounts, plus all accrued and accruing interest, including default interest (where applicable), fees (including attorneys' fees), and other charges allowable under the applicable documents and law (all such amounts, together with all amounts due under the law or under the applicable agreements, the "**Indebtedness**").

93.     Further, because Defendants have engaged in fraudulent, oppressive, or malicious behavior, Defendants are liable for punitive damages under Cal. Civ. Code § 3294(a).

### CLAIMS FOR RELIEF

### CLAIM ONE: BREACH OF CONTRACT
**(Against Defendant Blacksite Ranch, LLC)**

94.     Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

95.     Ms. Carlin and Blacksite entered into the Blacksite Note, constituting a valid and enforceable contract between Ms. Carlin and Blacksite.

96.     Pursuant to the Blacksite Note, Blacksite agreed to pay Ms. Carlin monthly interest payments on a two-year term of 8% per annum, as calculated based upon $700,000.00.

97.     Pursuant to the Blacksite Note, Blacksite agreed to repay the full amount of the Blacksite Note upon the maturity date of August 9, 2025.

QB\188085.00001\100773924.6

98.     Ms. Carlin fully performed her obligations under the Blacksite Note by paying upon Blacksite two wire transfers a sum totaling $700,000.00.

99.     Blacksite materially breached the Blacksite Note by failing to make any interest payment to Ms. Carlin due and payable under the Blacksite Note.

100.    Blacksite materially breached the Blacksite Note by failing to repay the entire outstanding indebtedness due under the Blacksite Note of the maturity date thereof.

101.    Plaintiffs have been damaged as a result of Blacksite's material breach of the Blacksite Note, specifically in that Plaintiffs were deprived of all sums and payments due to Plaintiffs under the Blacksite Note, in an amount to be proven at trial.

102.    This is a contested matter arising out of the Blacksite Note. As such, Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs incurred, pursuant to the Blacksite Note and California law. Cal. Civ. Code. § 1717(a).

## CLAIM TWO: UNJUST ENRICHMENT
**(Against Defendant Blacksite Ranch, LLC) (In the Alternative)**

103.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

104.    Blacksite received a benefit from Plaintiffs in Plaintiffs lending Blacksite the proceeds of the Blacksite Note.

QB\188085.00001\100773924.6

105.    Blacksite was enriched by retaining the benefits of the Blacksite Note while refusing to make the required payments to Ms. Carlin due thereunder, including repayment of any portion of the principal of the Blacksite Note.

106.    Plaintiffs were unjustly impoverished by not receiving payment from Blacksite of the amounts due and owing under the Blacksite Note.

107.    Blacksite does not have any justification for failing to pay Ms. Carlin the full amounts due under the Blacksite Note.

108.    If Plaintiffs are not successful on their claim for breach of the Blacksite Note, Plaintiffs lack another remedy at law.

### CLAIM THREE: BREACH OF CONTRACT
**(Against Defendant Wyld Products, LLC)**

109.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

110.    Plaintiffs and Wyld Products entered into the Wyld Note, constituting a valid and binding contract between Plaintiffs and Wyld Products.

111.    Under the Wyld Note, Plaintiffs lent the sum of $200,000.00 on the terms set forth in the Wyld Note.

112.    Wyld Products agreed to pay Plaintiffs at the times and in the amounts specified in the Wyld Note.

113.    Under the Wyld Note, Wyld Products agreed to pay to Plaintiffs monthly interest payments on a two-year term of 8% per annum, as calculated based upon $200,000.00.

114.    Wyld Products materially breached and continues to be in breach of the Wyld Note by failing to pay any of the amounts due and owing to Plaintiffs under the Wyld Note.

115.    Specifically, Wyld Products breached the Wyld Note by failing to make monthly payments of interest on the terms provided in the Wyld Note.

116.    Plaintiffs were damaged as a result of Wyld Products' material breach of the Wyld Note, specifically in that Plaintiffs were deprived of all sums and payments due to Plaintiffs under the Wyld Note, in an amount to be proven at trial.

117.    This is a contested matter arising out of the Wyld Note. As such, Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs incurred pursuant to California law. Cal. Civ. Code. § 1717(a).

## CLAIM FOUR: UNJUST ENRICHMENT
**(Against Defendant Wyld Jungle, LLC) (In the Alternative)**

118.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

119.    Upon information and belief, Wyld Jungle is the sole Manager of Wyld Products and wholly controlled the operations of Wyld Products.

120.    As Manager of Wyld Products, Wyld Jungle received a benefit from Plaintiffs in Plaintiffs lending Wyld Products the proceeds of the Wyld Note.

121.    Wyld Jungle was unjustly enriched by retaining the benefits of the Wyld Note while refusing to make the required payments to Plaintiffs on the terms agreed in the Wyld Note.

122.    Plaintiffs were impoverished by failing to receive payment from Wyld Jungle of the amounts due and owing under the Wyld Note.

123.    Wyld Jungle does not have any justification for failing to pay Plaintiffs the full amounts due under the Wyld Note.

124.    If Plaintiffs are not successful on their claim for breach of the Wyld Note, Plaintiffs lack another remedy at law.

## <u>CLAIM FIVE: ACCOUNTING</u>
### (Against Defendant Blacksite Ranch, LLC)

125.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

126.    At all relevant times, Blacksite owed Plaintiffs fiduciary duties of loyalty, care, and full disclosure regarding the company's financial affairs.

127.    Blacksite maintained sole and exclusive possession and control over the company's books, records, accounts, revenues, expenditures, and distributions.

128.    The financial transactions of Blacksite are numerous and complex.

129.    Blacksite has received approximately $700,000.00 in funds from Plaintiffs.

QB\188085.00001\100773924.6

130.    Plaintiffs cannot ascertain the true state of Blacksite's accounts without an accounting because the relevant account information is exclusively within Blacksite's possession and control.

131.    The accounts at issue are so complicated that there exists no other adequate remedy at law.

132.    An accounting is thus necessary to determine the amounts due and owing to Plaintiffs.

## CLAIM SIX: ACCOUNTING
### (Against Defendant Cards And Coffee, LLC)

133.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

134.    At all relevant times, Plaintiffs were members of Cards & Coffee, and Cards & Coffee owed Plaintiffs fiduciary duties of loyalty, care, and full disclosure regarding the company's financial affairs.

135.    Cards & Coffee has maintained sole and exclusive possession and control over the company's books, records, accounts, revenues, expenditures, and distributions.

136.    The financial transactions of Cards & Coffee are numerous and complex.

137.    Cards & Coffee has received approximately $250,000.00 in funds from Plaintiffs.

QB\188085.00001\100773924.6

138.    Plaintiffs cannot ascertain the true state of Cards & Coffee's accounts without an accounting because the relevant account information is exclusively within Cards & Coffee's possession and control.

139.    The accounts at issue are so complicated that there exists no other adequate remedy at law.

140.    An accounting is thus necessary to determine the amounts due and owing to Plaintiffs.

### CLAIM SEVEN: ACCOUNTING
**(Against Defendant More Franchises, LLC)**

141.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

142.    At all relevant times, Mr. Carlin was a Class B member of More Franchises, and More Franchises owed Mr. Carlin fiduciary duties of loyalty, care, and full disclosure regarding the company's financial affairs.

143.    More Franchises maintained sole and exclusive possession and control over the company's books, records, accounts, revenues, expenditures, and distributions.

144.    The financial transactions of More Franchises are numerous and complex.

145.    More Franchises received approximately $200,000.00 in funds from Plaintiffs.

COMPLAINT

146. Plaintiffs cannot ascertain the true state of More Franchises' accounts without an accounting because the relevant account information is exclusively within More Franchises' possession and control.

147. The accounts at issue are so complicated that there exists no other adequate remedy at law.

148. An accounting is necessary to determine the amounts due and owing to Plaintiffs.

### CLAIM EIGHT: ACCOUNTING
**(Against Defendant Wyld Jungle, LLC)**

149. Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

150. At all relevant times, Wyld Jungle owed Plaintiffs fiduciary duties of loyalty, care, and full disclosure regarding the company's financial affairs.

151. Wyld Jungle maintained sole and exclusive possession and control over the company's books, records, accounts, revenues, expenditures, and distributions.

152. The financial transactions of Wyld Jungle are numerous and complex.

153. Wyld Jungle received approximately $200,000.00 in funds from Plaintiffs.

QB\188085.00001\100773924.6

154.    Plaintiffs cannot ascertain the true state of Wyld Jungle's accounts without an accounting because the relevant account information is exclusively within Wyld Jungle's possession and control.

155.    The accounts at issue are so complicated that there exists no other adequate remedy at law.

156.    An accounting is necessary to determine the amounts due and owing to Plaintiffs.

## CLAIM NINE: ACCOUNTING
### (Against Defendant Wyld Products, LLC)

157.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

158.    At all relevant times, Wyld Products owed Plaintiffs fiduciary duties of loyalty, care, and full disclosure regarding the company's financial affairs.

159.    Wyld Products maintained sole and exclusive possession and control over the company's books, records, accounts, revenues, expenditures, and distributions.

160.    The financial transactions of Wyld Products are numerous and complex.

161.    Wyld Products, through Wyld Jungle, received approximately $200,000.00 in funds from Plaintiffs.

162.    Plaintiffs cannot ascertain the true state of Wyld Products' accounts without an accounting because the relevant account information is exclusively within Wyld Products' possession and control.

163.    The accounts at issue are so complicated that there exists no other adequate remedy at law.

164.    An accounting is necessary to determine the amounts due and owing to Plaintiffs.

## CLAIM TEN: BREACH OF FIDUCIARY DUTY
### (Against Defendant Dan Fleyshman)

165.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

166.    A fiduciary relationship existed between Plaintiffs and Mr. Fleyshman at all relevant times by virtue of Mr. Fleyshman's position as manager, officer, and/or controlling person of the various entities in which Plaintiffs invested, and by virtue of the trust and confidence Mr. Fleyshman solicited from and Plaintiffs reposed in Mr. Fleyshman.

167.    Mr. Fleyshman owed Plaintiffs the fiduciary duties of good faith, loyalty, fair dealing, and due care. Mr. Fleyshman owed these duties pursuant to the fiduciary nature of the parties' relationship and pursuant to California law. Cal. Corp. Code § 309; Cal. Corp. Code § 17704.09.

168.    Mr. Fleyshman breached the fiduciary duties owed to Plaintiffs by: (i) converting the proceeds of the various loans made to entities all ultimately

controlled by Mr. Fleyshman; (ii) engaging in self-interested transactions; (iii) failing to disclose relevant information including the existence of the $4,000,000 Ortsac Holdings senior loan; (iv) failing to disclose to Plaintiffs that their investment would be subordinate to the Ortsac Holdings loan and interest in Defendants' enterprises; (v) making false and misleading representations; (vi) commingling investor funds with Plaintiffs' investments and the personal funds of Mr. Fleyshman; and (vii) failing to act in the best interests of Plaintiffs and other investors.

169.    As a direct and proximate result of Mr. Fleyshman's breach of his fiduciary duties, Plaintiffs suffered damages in an amount to be determined at trial.

170.    In addition, Plaintiffs are entitled to punitive damages. In breaching its fiduciary duties, Mr. Fleyshman acted with malice and in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to recover punitive and exemplary damages in an amount to be determined at trial.

## CLAIM ELEVEN: BREACH OF FIDUCIARY DUTY
### (Against Defendant Elevator Studio, LLC)

171.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

172.    At all relevant times, Elevator was manager of Blacksite, More Franchises, and Wyld Jungle.

173.    As manager of Blacksite and More Franchises, Elevator owed Plaintiffs the fiduciary duties of good faith, loyalty, fair dealing, and due care.

QB\188085.00001\100773924.6

Elevator owed these duties pursuant to the fiduciary nature of the parties' relationship and pursuant to California law. Cal. Corp. Code § 309; Cal. Corp. Code § 17704.09.

174.    Elevator breached its fiduciary duties owed to Plaintiffs by engaging in self-interested transactions, failing to disclose relevant information, and converting funds.

175.    As a direct and proximate result of Elevator's breach of its fiduciary duties, Plaintiffs have suffered damages in an amount to be determined at trial.

176.    In addition, Plaintiffs are entitled to punitive damages. In breaching its fiduciary duties, Elevator acted with malice and in conscious disregard of Plaintiffs' rights, entitling Plaintiffs to recover punitive and exemplary damages in an amount to be determined at trial.

## CLAIM TWELVE: INTENTIONAL MISREPRESENTATION
### (Against Defendant Dan Fleyshman)

177.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

178.    As previously alleged herein, Mr. Fleyshman represented to Plaintiffs the following regarding the nature and purpose of the various investments into Mr. Fleyshman's enterprises, including the following (collectively, the "**Fleyshman Representations**"):

- Representations that the Blacksite Loan proceeds would be used to acquire and develop the Training Center;

- Representations that the Blacksite property had "no bank debt on it at all";

- Representations that the Cards & Coffee investment would be used to expand the business into a national company;

- Representations that the More Franchises investment would be used to fund the ongoing operations everbowl franchise locations;

- Representations that everbowl "does distributions" and was "paying distributions" on the terms agreed with its investors;

- Representations that the Wyld investment would operate an animal sanctuary, wedding venue, and merchandise business; and

- Repeated representations that Plaintiffs would be fully repaid with interest on the terms agreed to in the several contracts with Plaintiffs as set forth herein.

179.    Each of the Fleyshman Representations were false at the time made.

180.    At the time Mr. Fleyshman made the Fleyshman Representations, Mr. Fleyshman knew of their falsity, or made the Representations recklessly and without regard for their truth.

QB\188085.00001\100773924.6

181.    Mr. Fleyshman made the Fleyshman Representations with the intent to induce Plaintiffs to make investments in and loan money to Mr. Fleyshman's companies.

182.    In reliance upon the truth of the Fleyshman Representations, Plaintiffs entered into the Blacksite Loan, Cards & Coffee Investment, the Wyld investment, the Wyld Loan, and More Franchises Investment and paid the proceeds of these loans to Defendants.

183.    At the time Defendants made the Fleyshman Representations, Plaintiffs were ignorant of the falsity of each of the Fleyshman Representations and believed them to be true.

184.    As Defendants made the Fleyshman Representations in writings subject to the strictures of federal securities law, Plaintiffs' reliance upon the Fleyshman Representations was reasonable and justifiable.

185.    Had Plaintiffs known of the falsity of the Fleyshman Representations, Plaintiffs would not have made any of the several loans to Defendants.

186.    As a direct and proximate result of Plaintiffs' justifiable reliance upon the truth of the Fleyshman Representations, Plaintiffs suffered damages in an amount to be proven at trial, specifically but not limited to the deprivation of all amounts due to Plaintiffs from Defendants under the terms of the Blacksite Loan, Cards & Coffee Investment, the Wyld investment, the Wyld Loan, and More Franchises Investment.

187.    Mr. Fleyshman's conduct was willful, fraudulent, and malicious, entitling Plaintiffs to punitive damages.

## CLAIM THIRTEEN: NEGLIGENT MISREPRESENTATION
### (Against Defendant Dan Fleyshman)

188.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

189.    Mr. Fleyshman made the Fleyshman Representations to Plaintiffs regarding the use of investment funds and loan proceeds, as previously alleged herein.

190.    Each of the Fleyshman Representations were false.

191.    At the time Mr. Fleyshman made the Fleyshman Representations, Mr. Fleyshman had no reasonable grounds for believing them to be true.

192.    Mr. Fleyshman intended that Plaintiffs rely on the Fleyshman Representations in deciding whether to make loans to and invest in Mr. Fleyshman's companies.

193.    In reliance upon the truth of the Fleyshman Representations, Plaintiffs entered into the Blacksite Loan, Cards & Coffee Investment, the Wyld investment, the Wyld Loan, and More Franchises Investment and paid the proceeds of these loans to Defendants.

194.    At the time Defendants made the Fleyshman Representations, Plaintiffs were ignorant of the falsity of each of the Fleyshman Representations and believed them to be true.

QB\188085.00001\100773924.6

195.   As Defendants made the Fleyshman Representations in writings subject to the strictures of federal securities law, Plaintiffs' reliance upon the Fleyshman Representations was reasonable and justifiable.

196.   Had Plaintiffs known of the falsity of the Fleyshman Representations, Plaintiffs would not have made any of the several loans to Defendants.

197.   The Fleyshman Representations were material, and a reasonable person would consider Mr. Fleyshman's representations important in deciding whether to make investments and loans in businesses.

198.   Mr. Fleyshman made the Fleyshman Representations without exercising reasonable care or competence in communicating the information to Plaintiffs.

199.   As a direct and proximate result of Mr. Fleyshman's negligent misrepresentations, Plaintiffs suffered damages in an amount to be proven at trial, specifically but not limited to the deprivation of all amounts due to Plaintiffs from Defendants under the terms of the Blacksite Loan, Cards & Coffee Investment, the Wyld investment, the Wyld Loan, and More Franchises Investment.

## CLAIM FOURTEEN: FRAUDULENT CONCEALMENT
### (Against Defendant Dan Fleyshman)

200.   Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

QB\188085.00001\100773924.6

201.   As previously alleged herein, Mr. Fleyshman misrepresented and concealed facts regarding the intended use of funds wired to Mr. Fleyshman by Plaintiffs.

202.   Mr. Fleyshman failed to disclose to Plaintiffs numerous material facts relevant to their investment decisions, including but not limited to:

- The existence of the $4,000,000.00 Ortsac Holdings loan secured by the Blacksite property, which constituted senior debt to Plaintiffs' investment;

- Mr. Fleyshman's personal guaranty of the Ortsac Holdings loan;

- The financial condition of the various entities, including ongoing losses, insufficient cash flow, and inability to meet debt service obligations;

- That funds invested by Plaintiffs would be commingled with other investor funds and potentially used for purposes other than those stated;

- The lack of proper permits and zoning approvals for Wyld Jungle operations; and

- The lack of any actual affiliation between More Franchises and the everbowl franchise operated by Jeff Fenster.

203.   Mr. Fleyshman made these misrepresentations and concealed material facts in connection with the solicitation of investments from Plaintiffs.

204.    Mr. Fleyshman's misrepresentations and concealments were materially false and misleading.

205.    Mr. Fleyshman knew or had reason to know these misrepresentations and concealments were false when he made them.

206.    Mr. Fleyshman had a duty to disclose these concealed facts by virtue of the fiduciary relationship between Plaintiffs and Defendants.

207.    Plaintiffs relied upon Mr. Fleyshman's misrepresentations and concealments to their detriment by wiring funds to Mr. Fleyshman's companies.

208.    Plaintiffs' reliance on Mr. Fleyshman's misrepresentations and concealments was justifiable because Mr. Fleyshman concealed the falsity of his representations about the intended use of funds wired to him by Plaintiffs.

209.    Mr. Fleyshman's misrepresentations and concealments were the direct and proximate cause of Plaintiffs' damages.

210.    As a result, Plaintiffs have been damaged in an amount to be determined at trial, specifically but not limited to the deprivation of all amounts due to Plaintiffs from Defendants under the terms of the Blacksite Loan, Cards & Coffee Investment, the Wyld investment, the Wyld Loan, and More Franchises Investment.

211.    In addition, Plaintiffs are also entitled to punitive damages. Mr. Fleyshman acted with malice and with the specific intent to deprive Plaintiffs of their investments.

QB\188085.00001\100773924.6

## CLAIM FIFTEEN: CONVERSION
### (Against Defendant Dan Fleyshman)

212.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

213.    Pursuant to the Blacksite Memorandum, the Blacksite Loan proceeds were to be used solely "to acquire the Property and facilitate the development of the Training Center."

214.    The Wyld Loan proceeds were to be used solely for the purposes of funding the Wyld Business.

215.    The Blacksite Loan proceeds were deposited specifically into Blacksite's accounts and constitute specifically identifiable funds.

216.    The Wyld Loan proceeds were deposited specifically into Wyld Jungle's account and constituted specifically identifiable funds.

217.    Plaintiffs retain a right to immediate possession of the Blacksite Loan proceeds in the event Blacksite used the funds for any unauthorized purpose or Blacksite otherwise defaulted on the Blacksite Loan.

218.    Plaintiffs retain a right to immediate possession of the loan proceeds in the event Wyld Jungle or Wyld Products used the funds for any unauthorized purpose or Wyld Jungle otherwise defaulted on the Wyld Loan.

219.    Mr. Fleyshman knowingly diverted the Blacksite Loan proceeds for unauthorized uses, including, upon information and belief, for Mr. Fleyshman's

personal use, thereby exercising wrongful dominion over specifically identifiable funds in violation of Plaintiffs' possessory rights.

220.    Mr. Fleyshman knowingly diverted the Wyld Loan proceeds for unauthorized uses, including, upon information and belief, for Mr. Fleyshman's personal use, thereby exercising wrongful dominion over specifically identifiable funds in violation of Plaintiffs' possessory rights.

221.    Plaintiffs did not consent to Mr. Fleyshman's use of the Blacksite Loan proceeds for a purpose other than the stated purpose.

222.    Plaintiffs did not consent to Mr. Fleyshman's use of the Wyld Loan proceeds for a purpose other than the stated purpose.

223.    Despite proper and timely demand, Mr. Fleyshman has not returned the Blacksite Loan or the Wyld Loan to Plaintiffs and continues to exercise improper dominion and control over the property.

224.    As a direct and proximate result of Mr. Fleyshman's conversion, Plaintiffs have suffered damages in an amount to be proved at trial.

225.    Mr. Fleyshman acted willfully and in bad faith in converting Plaintiffs' property.

## CLAIM SIXTEEN: CONSTRUCTIVE FRAUD
### (Against Defendant Dan Fleyshman)

226.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

QB\188085.00001\100773924.6

227.    At all relevant times, Mr. Fleyshman wholly controlled the operations of Blacksite, Cards & Coffee, More Franchises, Wyld Products, and Wyld Jungle.

228.    By virtue of Mr. Fleyshman's position of control and authority, Defendant owed fiduciary duties of loyalty, care, full disclosure, good faith, and the obligation to refrain from self-dealing, to Plaintiffs.

229.    In breach of these fiduciary duties, Mr. Fleyshman made material misrepresentations and/or failed to disclose material facts, as alleged herein.

230.    Mr. Fleyshman had a duty to disclose material facts to Plaintiffs.

231.    Mr. Fleyshman's affirmative misstatements and failure to disclose material facts constitutes a breach of fiduciary duty and constructive fraud under California Civil Code § 1573.

232.    Plaintiffs reasonably relied on Mr. Fleyshman's representations and omissions in making the Blacksite Loan, Cards & Coffee Investment, More Franchises Investment, and Wyld Loan.

233.    Plaintiffs' reliance was reasonably justified because Mr. Fleyshman occupied a position of trust and confidence and exercised superior knowledge and control over each company's affairs.

234.    As a direct and proximate result of Mr. Fleyshman's constructive fraud, Plaintiffs suffered damages in an amount to be proven at trial.

235.    Mr. Fleyshman's conduct was oppressive, fraudulent, and malicious, entitling Plaintiffs to punitive damages.

## CLAIM SEVENTEEN: UNFAIR BUSINESS PRACTICES
### (Against All Defendants) (Cal. Bus. & Prof. Code § 17200 et seq.)

236.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

237.    Plaintiffs are informed and believe and on that basis allege that the acts and practices of Defendants described above constitute acts of unfair business practices as defined by California Business and Professions Code §17200, et seq. and by case and statutory law applicable in the State of California.

238.    Defendants' conduct as described herein, including the making of the false Fleyshman Representations and Olmos Representations and breaches of fiduciary duty owed to Plaintiffs, was fraudulent and wrongful within the meaning of Cal. Bus. & Prof. Code § 17200 et seq.

239.    Defendants' conduct as described herein was further unlawful within the meaning of the Code by virtue of Defendants' conversion of Plaintiffs' property.

240.    Defendants' conduct also constitutes unfair conduct within the meaning of the Code because investors were and are likely to be deceived by Defendants' misrepresentations and omissions, as alleged herein.

241.    As a direct and proximate result of Defendants' conduct described herein, Plaintiffs suffered injury in fact and have lost money within the meaning of

QB\188085.00001\100773924.6

the California Business & Professions Code § 17204, including but not limited to the proceeds of the Blacksite Loan, the Cards & Coffee Investment, the More Franchise Investment, and the Wyld Loan.

242.    Plaintiffs are entitled to restitution of the property wrongfully deprived from them.

243.    Plaintiffs are also entitled to an injunction prohibiting Defendants from engaging in this type of conduct in the future.

### CLAIM EIGHTEEN: PROMISSORY FRAUD
### (Against Defendant Dan Fleyshman)

244.    Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

245.    Mr. Fleyshman made promises to Plaintiffs, including promises that:

- The investment proceeds would be used for specific, stated purposes;

- Plaintiffs would receive 8% annual interest on their loans;

- Plaintiffs would receive monthly interest payments;

- Plaintiffs would be repaid in full upon maturity of the loans;

- Mr. Fleyshman would repay Plaintiffs in full with interest; and

- Plaintiffs would receive distributions from their equity investments.

246.    At the time Mr. Fleyshman made these promises, he did not intend to perform them.

QB\188085.00001\100773924.6

247. Mr. Fleyshman made these promises with the intent to induce Plaintiffs to make the investments and loans alleged herein.

248. Plaintiffs reasonably relied on Mr. Fleyshman's promises in making the investments and loans alleged herein.

249. Mr. Fleyshman has failed to perform these promises.

250. As a direct and proximate result of Mr. Fleyshman's promissory fraud, Plaintiffs have suffered damages in an amount to be proven at trial.

251. Mr. Fleyshman's conduct was willful, fraudulent, and malicious, entitling Plaintiffs to punitive damages.

## CLAIM NINETEEN: RESCISSION
### (Against All Defendants) (In the Alternative)

252. Plaintiffs hereby incorporate each allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

253. Plaintiffs entered into the agreements with Defendants based upon fraudulent misrepresentations and material omissions, as alleged herein.

254. Pursuant to California Civil Code § 1689(b)(1), a party to a contract may rescind the contract if his or her consent was obtained through fraud.

255. Plaintiffs' consent to the various investment agreements was obtained through fraud.

256. Plaintiffs hereby elect to rescind the Blacksite Note, the Wyld Note, the Cards & Coffee investment, and the More Franchises investment based on Defendants' fraud.

257. Upon rescission, Plaintiffs are entitled to the return of all consideration paid, together with interest from the date of payment.

258. Plaintiffs offer to restore to Defendants any consideration received by Plaintiffs, including any membership units or other securities.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

A.    The entire amount of the Indebtedness;

B.    Accrued and accruing interest on the foregoing at the rates set forth above until paid in full;

C.    In the alternative, general damages, according to proof.

D.    In the alternative, rescission of the parties' agreements declaring them null and void ab initio;

E.    Direction to the parties to return any consideration, funds, or property exchanged pursuant to any of the parties' agreements;

F.    Restoration of the parties to their respective positions as they existed prior to the execution of any of the parties' agreements;

G.    Punitive damages, to deter Defendants from similar conduct in the future.

H.    Attorneys' fees, as provided in contract.

I.    Such other and further relief as is available to Plaintiffs under the circumstances of this case.

1          Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a

2     jury trial.

3     Dated:  March 2, 2026                THE LAW OFFICE OF SETH P. COX, PC
                                           -and–
4                                          QUARLES & BRADY LLP

5
                                    By:    _/s/ Amelia B. Valenzuela_
6                                          Seth P. Cox
                                           Amelia B. Valenzuela
7
                                           Attorneys for Plaintiffs Patricia and David
8                                          Carlin

9

10

11

12

13

14

15

16

17

18

19

20

21

-46-
COMPLAINT

1

### **VERIFICATION**

2      I, PATRICIA CARLIN, declare that I am over the age of 18 years of age and am

3   competent to make this Verification.  I am one of the named Plaintiffs in this action.

4      I have reviewed the information contained in the Complaint, and the information

5   contained therein is true and correct except for those matters stated to be true upon

6   information and belief, and as to those matters, I believe them to be true.

      I declare under penalty of perjury that the foregoing is true and correct.

7      Executed this 27th day of February, 2026, in Phoenix, Arizona.

8

9   _____
    PATRICIA CARLIN

10

11

12

13

14

15

16

17

18

19

20

21